UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BONNIE BRADLEY,

      Plaintiff,                          Case No. 14-13364

v.

                                     HON. DENISE PAGE HOOD

RHEMA-NORTHWEST
OPERATING, LLC,

      Defendant.

_____/

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT [Docket No. 25]

Now before the Court is a Motion for Summary Judgment filed on June 17,
2015 by Defendant Rhema-Northwest Operating, LLC ("Defendant"). [Dkt. No. 25]
Plaintiff Bonnie Bradley ("Plaintiff") filed a Response to the Motion [Dkt. No. 27,
filed July 8, 2015], to which Defendant filed a Reply. [Dkt. No. 30, filed July 24,
2015]  A hearing on the Motion for Summary Judgment was held on July 29, 2015.

I.     BACKGROUND

Plaintiff is a 65-year old female nurse who began working for TenderCare
(Michigan), Inc. in May 2002.  When Defendant purchased TenderCare (Michigan),
Inc. in January, 2007, Defendant continued to employ Plaintiff as a Charge Nurse,

1

and Plaintiff worked at "The Manor."  Defendant terminated Plaintiff on May 8, 2014.  In this cause of action, Plaintiff asserts that Defendant discriminated against her on the basis of age, in violation of the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), and gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

On a motion for summary judgment, all facts must be construed in favor of the non-moving party, Plaintiff.  In reviewing Plaintiff's response brief, she offers little admissible evidence.  Plaintiff's "facts" generally consist of inadmissible hearsay and conclusory statements unsupported by testimony or documentation.  For example, Plaintiff states that she "testified that she heard Management Nurses Natalie Robinson, Ms. James and Sonja, *sic (Sonya)* Watkins talking about how Administrator Tim Frank ("Frank") made those discriminating statements in a morning meeting about wanting to get rid of old people because they are a liability and they also told [Plaintiff] that." Dkt. No. 27, PgID 602. *See also* Dkt. No. 27, PgID 599, 600, 601.  Similarly, Plaintiff indicates two other employees of Defendant "testified they heard employees of the Manor complaining that male employees were being treated better than female nurses and heard complaints about males not being disciplined for the same things that females would do [and be disciplined for]." Dkt. No. 27, PgID 599-600.  Plaintiff also submits an affidavit from Kerry High, a former

employee of Defendant, who states that a third former employee was told by the Assistant Director of Nursing at the Manor that the third employee was "too old to be working and that she needed to go home to sit down, and that she didn't need to be working." Dkt. No. 27, PgID 603 (Paragraph 7).

There is no deposition testimony – or even an affidavit – from any of the persons who purportedly heard Defendant's employees make the alleged discriminatory statements. Instead, Plaintiff has proffered only inadmissible hearsay. Likewise, when Plaintiff has offered affidavits, the affiant has averred only a conclusory statement or opinion such as: (1) "Based on what I heard and saw at the Manor, I came to the conclusion that they were discriminating against their employees because of their old age, including [Plaintiff]," Dkt. No. 27, PgID 599; (2) "I also witnessed [Plaintiff] being treated differently than the other younger nurses in her position," Dkt. No. 27, PgID 604; or (3) averring that Plaintiff "went from being treated well by management to being picked on for no reason other than what I came to conclude was her old age.  Management and the Administration would never listen to [Plaintiff]'s complaints about her treatment." Dkt. No. 27, PgID 603 (Paragraph 10).

Plaintiff also fails to proffer any records that demonstrate the age and/or gender of employees hired or fired by Defendant, such that the Court or a jury could consider

Defendant's employment practices and patterns.  The best evidence Plaintiff offers

is one paragraph of the affidavit of Kerry High, who averred that:

> The Manor then terminated Ms. Lee [Emogene Lee] and then brought
> her back after they terminated [Plaintiff].  They also brought back
> another older nurse who they terminated named Ms. Eula Mae Harris.
> They brought them back so they would not look like they were
> discriminating against their employees based on their age.

Dkt. No. 27, Ex. 1 (Paragraph 8).  The last sentence is a conclusory opinion, but the

first two sentences might constitute circumstantial evidence of age discrimination –

if there was a record demonstrating those firings and hirings occurred and the ages

of Ms. Lee and Ms. Harris were known.  Plaintiff has offered no documents or

testimony that demonstrate when Ms. Lee (age 73) and Ms. Harris (age 61) were

terminated or rehired.  Defendant has offered evidence that: (1) Ms. Lee resigned in

October 2012 and rehired in December 2013, months before Plaintiff was terminated;

and (2) Ms. Harris quit in April 2014 and was rehired in July 2014.

Defendant set forth the following facts in its brief in support of its Motion for

Summary Judgment, and Plaintiff has not objected to any of them.  On June 11, 2009,

long after Defendant had purchased Tendercare (Michigan), Inc., Plaintiff signed an

Acknowledgment of receipt of Defendant's employee handbook.  The handbook

identifies three categories of work rules.  Category I work rules are less serious than

those in Categories II and III, and they may be treated with progressive discipline,

unless they "are recurring or considered serious enough under the circumstances to warrant advanced disciplinary action up to and including termination." Dkt. No. 25, Ex. 6 at PgID 500.  Category II work rules are "of a serious nature and will result in a Final Warning for the first violation even though a Written Warning #1 or Written Warning #2 has not been issued." *Id.* at PgID 501.  Category III work rules "are most serious and violations will subject an employee to immediate suspension without pay pending an investigation and, if verified, will lead to termination." *Id.*

Defendant's handbook provides for discipline as follows:

Progressive discipline simply means that less serious infractions will be treated as such; however, should job performance or behavioral problems persist, disciplinary action will progress to more serious steps. While most infractions start with a Written Warning #1, some serious infractions warrant a Final Wa[r]ning for the first infraction and, for very serious infractions, Suspension/Discharge will be the first step. The employee's supervisor will determine the appropriate level of discipline in each case and will acknowledge mitigating circumstances where they apply. The progressive steps are:

1. **Written Warning #1** - This is the first step in any Category I work rule violation. The supervisor will discuss the problem with the employee and document on the Disciplinary Action Record. A Written Warning #1 does not mean that the employee's job is in immediate danger; however, it does mean that the problem must be corrected.

2. **Written Warning #2** - This is the second step for any additional work rule violation of Category I. A Written Warning #2 will be used only if Written Warning #1 was issued in the past

twelve (12) months. The supervisor will discuss the infraction with the employee and complete a Disciplinary Action Record.

3. **Final Warning** - A Final Warning is issued if a Written Warning #2 was issued within the past twelve (12) months for a Category I work rule violation or as the first step for a Category II work rule violation. The supervisor and/or department head will review the employee's file to determine the appropriate level of discipline. After such determination is made, the supervisor will discuss the problem with the employee.  A Disciplinary Action Record must be completed. The problem must be corrected immediately or the employee will be subject to discharge.

4. **Suspension/Discharge** - A Suspension/Discharge will be the fourth step for any additional Category I work rule violation; the second step in any additional Category II work rule violation; or the first step for a very serious Category III work rule violation. An employee may be "suspended" pending investigation and depending upon the results of the investigation, the employee may be discharged.

> a. Suspension is not intended as a punitive step in the progressive discipline process. Employees may be suspended, without pay, to allow enough time to gather information enabling facility management to make an informed decision based upon all the facts.

> b. If an employee is suspended and there are insufficient grounds for any form of disciplinary action, the employee will be brought back to work, and the employee will be paid for any scheduled time missed as a result of the suspension.

c. If an employee is suspended and there are sufficient grounds for a Final  Warning instead of termination, the employee will be brought back to work and issued a Final Warning.  Any scheduled

6

> time missed as a result of the suspension may be paid only at the
> manager's discretion.

Dkt. No. 25, Ex. 6 at PgID 502-03. "Disciplinary action records are active for
twelve (12) months, except those relating to allegations of patient neglect or abuse,
which will remain in effect indefinitely. Notices older than 12 months will no longer
be used against an employee but will remain in the employee[']s personnel file[.]" *Id.*
at PgID 502.

On July 22, 2013, Plaintiff received a first written warning for providing
medications to a resident's family against medical authorization (a Category I work
rule). Plaintiff received a second written warning on September 27, 2013 for
neglecting resident care duties when she gave a resident 30 mg of morphine instead
of the required 15 mg (a Category III work rule for which she could have been fired).
On February 17, 2014, Plaintiff and another employee had an "inappropriate
conversation" in a resident area (a Category I work rule). Both Plaintiff and the other
employee were suspended pending an investigation. Due to the two prior disciplinary
incidents, Defendant also gave Plaintiff a final warning for this incident. In April
2014, Plaintiff worked overtime without the required prior authorization three times
in one week (a Category I work rule). LaVania Fudge, Defendant's Director of

7

Nursing and Plaintiff's supervisor ("Fudge"), met with the Human Resources Coordinator shortly thereafter, and Defendant terminated Plaintiff on May 8, 2014.

Defendant claims to have terminated Plaintiff for the foregoing violations, consistent with the discipline process set forth in the handbook.  Plaintiff counters that: (a) Fudge authorized Plaintiff's overtime; and (b) Defendant was motivated by Plaintiff's gender and age when it decided to terminate her, *i.e.*, Defendant asserted the disciplinary events as a pretext to discriminate against her.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of demonstrating that summary judgment is appropriate.  *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974).   The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those

facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis added).  To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact.  Any dispute as to a material fact must be established by affidavits or other documentary evidence.  Fed. R. Civ. P. 56(c).  "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted).  Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## III.   ANALYSIS

Both ADEA and Title VII discrimination may be shown by direct evidence or by a preponderance of indirect or circumstantial evidence.  Mixed-motive cases are not permitted under the ADEA, *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 176, 177-78 (2009), but mixed-motive cases are permissible under Title VII.

[T]o survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) "race, color, religion, sex, or national origin was a motivating factor" for the defendant's adverse employment action. 42 U.S.C. § 2000e-2(m) (emphasis added). See Wright, 455 F.3d at 716 (Moore, J., concurring) ("[A]n employee raising a mixed-motive claim can defeat an employer's motion for summary judgment by presenting evidence-either direct or circumstantial-to 'demonstrate' that a protected characteristic 'was a motivating factor for an employment practice, even though other factors also motivated the practice.'" (quoting 42 U.S.C. § 2000e-2(m))). This burden of producing some evidence in support of a mixed-motive claim is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim. See Anderson, 477 U.S. at 252, 106 S.Ct. 2505. Moreover, as it is irrelevant, for purposes of a summary judgment determination, whether the plaintiff has presented direct or circumstantial evidence in support of the mixed-motive claim, see Desert Palace, 539 U.S. at 99-100, 123 S.Ct. 2148, we direct that this summary judgment analysis just described, rather than the McDonnell Douglas/Burdine burden-shifting framework, be applied in all Title VII mixed-motive cases regardless of the type of proof presented by the plaintiff.

White v. Baxter Healthcare Corp., 533 F.3d 381, 400 (6th Cir. 2008).

## A.    No Direct Evidence of Discrimination

Plaintiff suggests that there is direct evidence of discrimination. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Wexler v. White's Fine Furniture, Inc., 3137 F.3d 564, 570 (6th Cir. 2003).

10

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

Plaintiff suggests that her testimony that certain managers told Plaintiff that Frank (the Administrator) had said "he wanted to get rid of the old people" and "old people are a liability to" Defendant constituted direct evidence of discrimination. Dkt. No. 27, PgID 605.   Those statements are inadmissible hearsay, and they are unsupported by any direct testimony, recording, or documentation.  The Court finds that Plaintiff has not identified any admissible statements or actions of Defendant or its agents that constitute direct evidence of gender or age discrimination.

### B.    No Circumstantial Evidence of Discrimination

"Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.  In order to establish a *prima facie* case of discrimination under the ADEA and Title VII, Plaintiff must prove by a preponderance of the evidence that: (1) she was a member of a protected class (here, at least 40 years old); (2) she was subject to an adverse employment decision; (3) she was qualified for the position she held; and (4) that she was replaced by someone younger (ADEA) or male (Title VII), or treated differently than a younger person or

11

a male, such that it supports an inference of discrimination. *See, e.g.,Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir. 1996) (ADEA); *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 526-27 (6th Cir. 2012) (Title VII). "An allegation that [Plaintiff] was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283-84 (6th Cir. 2012) (replacement who was 6½ years younger was sufficient to create a genuine dispute of material fact) (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (creating a zone of discretion whether someone is younger for purposes of age discrimination if the replacement is six to ten years younger than the plaintiff)).

If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean*, 349 F.3d at 335; *McDonnell Douglas*, 411 U.S. at 805. Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805.

A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). A plaintiff can not establish a prima face of age discrimination based on vague, ambiguous or isolated remarks. *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000) (citation omitted).

Plaintiff has alleged that she was subjected to the following adverse employment actions that were the result of discrimination based on her age and gender: (1) she was disciplined in a manner that younger employees were not; (2) she was not granted vacation requests that Defendant awarded other employees; and (3) she was not given overtime that others were awarded, and (4) she was terminated for working overtime but others were not.

### 1.   *Plaintiff was Qualified*

Defendant first argues that Plaintiff cannot satisfy the first element of her ADEA and Title VII claims because she was not qualified for the position. Defendant's argument is misplaced.  The evidence demonstrates, and Defendant

13

acknowledges, that Plaintiff was employed by Defendant (and its predecessor) as a Registered Nurse for more than 10 years before she was terminated.  Even if Plaintiff engaged in the conduct that led to being disciplined and terminated by Defendant, there is, at a minimum, a genuine dispute of material fact that she was qualified to perform the position in which she was employed.

### 2.   Discipline

Plaintiff alleges in her complaint that similarly situated employees were treated more favorably than her with respect to work rule violations.  Defendant argues that the evidence demonstrates otherwise, and the Court agrees.  First, Plaintiff does not identify any instances where an employee who committed workplace violations like Plaintiff's first two violations was not disciplined in a manner similar to how she was disciplined.[1]   Plaintiff also has not produced evidence that Defendant failed to discipline any other employee for workplace violations related to the distribution of medications.

Second, Plaintiff has not offered evidence that any similarly situated employee: (1) had an "inappropriate conversation" in a resident area, but (2) was not disciplined

---

[1]Those violations were: (1) providing medications to a resident's family against medical authorization; and (2) neglecting resident care duties by giving a resident 30 mg of morphine instead of the required 15 mg.

14

for doing so.  With respect to the "inappropriate conversation" incident for which Plaintiff received her third discipline, both Plaintiff and the other employee involved were: (a) suspended pending an investigation, and (b) given three-day unpaid suspensions.  The only difference between how Defendant treated Plaintiff and the other employee was that Plaintiff was given a final warning for that incident.  It is undisputed that the final warning given to Plaintiff was due to Plaintiff's prior disciplinary incidents, and there is no evidence that the other employee had any prior disciplinary incidents.

Third, Plaintiff testified that the other employee she witnessed yelling or having inappropriate conversations was disciplined for it. Dkt. No. 25, Ex. 1 at 227. Fourth, Plaintiff acknowledged that she does not know if any younger employees were disciplined for working unauthorized overtime around the time she was. Dkt. No. 25, Ex. 1 at 202-03.

The Court concludes that there is no genuine dispute of material fact that would support a finding that Plaintiff was disciplined differently than other employees due to her age or gender.

### 3.    *Vacation*

Defendant argues that the denial of vacation cannot constitute an adverse employment action.  The Court disagrees, as the denial of vacation – or any other

benefit that accompanies an employee's employment – could constitute a material adverse action. But, as Defendant argues, courts generally have not been sympathetic to employment actions that are merely inconvenient or *de minimis* and not "significant change[s] in employment status, such as hiring, firing, failing to promote, . . . or a decision causing significant change in benefits." *See, e.g., Mitchell v. Univ. Med. Ctr, Inc.*, 2010 WL 3155842, at \*7 (6th Cir. 2010) (quoting *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007)); *Carroll v. Potter*, 2007 WL 3342298, at \*6 (W.D. Ky. Nov. 6, 2007) ("As inconvenient as being given a low priority for choosing vacation days and being forced to work certain holidays may be, these actions cannot be considered materially adverse").

Defendant contends that Plaintiff was never denied the use of any vacation days, and she was denied specific vacation requests on some occasions only because other employees already had requested vacation at those times. Plaintiff acknowledges that: (1) she was not denied the right to use—and acknowledges that she did use—all of her available vacation; and (2) others had already requested days off on the occasions her vacation request was denied. *See* Dkt. No. 25, Ex. 1 at 97-99, 104, 107 109-10, 113; Ex. 2 at 36; Ex. 16. The Court also finds that Plaintiff has offered no evidence that Defendant's proffered reason was pretextual. Plaintiff has not offered evidence that any other employees' vacation requests were granted more

16

frequently than hers, nor has she explained the reasons other employees's vacation requests were granted or denied, such that any discriminatory motive could be identified.

The Court concludes that there is no genuine dispute of material fact that would support a finding that Plaintiff was denied vacation opportunities on the basis of her age or gender.

### 4.    *Denial of Overtime*

Although Plaintiff did not plead that she was denied overtime given to others, she testified at her deposition that younger and male nurses were given more overtime opportunities than she was.   To survive summary judgment, a plaintiff must "produce[] evidence sufficient to raise a genuine issue of material fact as to whether [s]he was denied overtime opportunities, or whether similarly situated [younger employees] were given overtime opportunities [she] was denied." *Montgomery v. Honda of Am. Mfg., Inc.*, 47 F. App'x 342, 349 (6th Cir. 2002).

Defendant has submitted evidence that, from January 1, 2013 to May 31, 2014, Plaintiff and the younger, male nurses identified by Plaintiff worked the following number of overtime hours: (a) Mr. Chandler (age 57) - 341.9 hours; (b) Plaintiff (age 65) - 194.2 hours; (c) Mr. Pollard (age 57) - 123 hours; (d) Mr. Gotto (age 38) - 68.8 hours; and (e) Mr. Ross (age 50) - 0 hours.  Defendant states that Mr. Chandler was

the only nurse willing to work any shift, which is why he had so many more hours than the others.  Plaintiff has offered no evidence that contradicts Defendant's evidence.

The Court finds there is no material evidence that Plaintiff was denied overtime opportunities given to younger or male nurses, such that a reasonable factfinder could determine that Plaintiff was denied overtime on the basis of her age or gender.

### 5.   *Termination*

As to Plaintiff's termination, the Court has already concluded that Plaintiff was a member of a protected class (over 40 and female), and was qualified.  Termination of employment, in itself, constitutes an adverse employment action. *Mitchell*,  2010 WL 3155842, at *7.  Defendant argues that Plaintiff's ADEA claim is not viable because she was not replaced at all.  The Court is not persuaded by Defendant's argument.  Defendant states that Karen Moss, a co-worker formerly on the midnight shift, "chose to change shifts to days and is performing the RN duties Plaintiff had." Defendant does not indicate: (a) whether Karen Moss or any other employee(s) assumed Plaintiff's duties—in addition to their own existing duties, or (b) that Karen Moss was not replaced when she "began performing the RN duties Plaintiff had." *See Blizzard*, 698 F.3d at 283-84 (a person is not replaced when the work is redistributed among other existing employees already performing related work or an existing

18

employee <u>assumes</u> a terminated co-worker's job duties). For those reasons, the Court finds that there is at least a genuine issue of material fact whether Karen Moss replaced Plaintiff.

The Court also finds that Plaintiff has presented evidence to show she was replaced by someone younger for purposes of the ADEA. Karen Moss, was 46 years old at the time she replaced Plaintiff. That difference in age (nearly 20 years) is well beyond the 6-10 difference in age range within which the Court can exercise discretion as to whether the age difference is significant. *Grosjean*, 349 F.3d at 336. The Court concludes that the difference in age between Karen Moss and Plaintiff was significant enough to treat Karen Moss as a younger employee. *Blizzard*, 698 F.3d at 283.

For the reasons stated above, the Court finds that there is a genuine dispute of material fact with respect to each of the elements necessary to establish a prima facie ADEA case as it relates to Plaintiff's termination. As Plaintiff was replaced by a woman and not someone outside of her protected class (for purposes of gender discrimination), she cannot establish a prima facie Title VII case of discrimination as it relates to her termination.

The Court finds that Defendant has satisfied its burden of offering a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant maintains it

19

terminated Plaintiff in accord with the discipline process outlined in Defendant's handbook. Defendant has submitted evidence that shows Plaintiff was disciplined three times for work rule violations and, after the third violation, was given a warning that she would be terminated if she had another work rule violation. Plaintiff then violated another work rule, and Defendant terminated her.

Plaintiff offers no evidence that would enable a reasonable finder of fact to conclude that Defendant's decision to terminate Plaintiff was mere pretext for discrimination. Plaintiff has failed to offer evidence that would support a finding that Defendant's proffered reason: (1) had no basis in fact;[2] (2) did not actually motivate Defendant's decision to terminate her; or (3) was not sufficient to warrant terminating her. *Dews*, 231 F.3d at 1021. Plaintiff has submitted no admissible evidence of any comments by Defendant's employees regarding age or gender. There also is no evidence that younger or male employees remained employed when they had violated a work rule after they had been disciplined three times and had been warned that a

---

[2]Plaintiff argues that she should not have been disciplined for working overtime without authorization because Fudge had previously authorized the overtime at some point after November 2013. The evidence does not support her argument. When she was disciplined for working overtime without authorization, Plaintiff did not indicate on the employee statement portion of her disciplinary action that Fudge had authorized the overtime for which she was being disciplined. Dkt. No. 25, Ex. 1 at PagID 354 (Page 190). When asked at her deposition whether she knew "if any of those employees [male, younger females] ever worked overtime without prior approval," Plaintiff answered "No, I don't." Dkt. No. 25, Ex. 1 at PgID 353-54 (Pages 188-89).

fourth violation would result in termination.

The Court concludes that there is no genuine dispute of material fact that would support a finding that Plaintiff was terminated on the basis of age or gender discrimination.

### 6.   Conclusion

For the reasons stated above, the Court concludes that Plaintiff cannot satisfy her burden of establishing a viable ADEA or Title VII claim by circumstantial or indirect evidence.

### C.   Title VII Claim - Mixed Motive

In his response, Plaintiff argues only that:

> The issue here is whether Plaintiff's gender was a motivating factor in the purposeful act of not scheduling Plaintiff for overtime thus adversely affecting her pay, and terminating Plaintiff's employment. The testimony and affidavits cited herein provide ample support for Plaintiff's claim.

Dkt. No. 27, PgID 619. Although it does not matter what kind of evidence (direct or circumstantial) is offered to show that gender was a motivating factor, some evidence to support such a finding must be produced. *See White*, 533 F.3d at 400 (a case should not be sent to the jury where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim).

In arguing her mixed-motive theory, Plaintiff does not specifically identify any

admissible testimony or evidence to support her theory that gender was a motivating factor in any of the adverse employment actions she claims.  Although Plaintiff argues that her gender was a motivating factor for Defendant's decisions relative to her employment, discipline, and termination, Plaintiff has offered no admissible evidence that her gender factored into (was a motivating factor for) for those decisions by Defendant.  For that reason, the Court concludes that Plaintiff cannot prevail on a mixed-motive theory with respect to her Title VII gender discrimination claim.

### D.    Conclusion

As the Court has concluded that there is not any direct or circumstantial evidence to support Plaintiff's ADEA and Title VII claims, nor evidence to support Plaintiff's mixed-motive theory of liability on her Title VII claim, the Court grants Defendant's motion for summary judgment.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Rhema-Northwest Operating, LLC's Motion for Summary Judgment [Docket No. 25, filed on June 17, 2015] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Rhema-Northwest Operating, LLC's Motion to Strike [Docket No. 29, filed on July 24, 2015] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection [Docket No. 34, filed on October 29, 2015] to the Order on Motion to Compel, Order on Motion to Strike is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's cause of action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  September 29, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager